IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Ruben Mungaray, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs<br><br>vs.<br><br>Alere Toxicology Services, Inc., Nationwide Testing Association Inc., and Quantix SCS LLC<br><br>Defendants | Case No.: 2:24-cv-03909-DCN-MGB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff, Ruben Mungaray, on behalf of himself and all other similar situated, by way of this Complaint, brings the below claims against Defendants Alere Toxicology Services, Inc. ("Alere"), Nationwide Testing Association ("NTA"), and Quantix SCS, LLC ("Quantix"), (collectively "Defendants") through his undersigned attorney, respectfully alleges unto this Honorable Court as follows:

**NATURE OF CLAIMS**

1. Plaintiff brings claims of Negligence, Gross Negligence and Defamation against Alere, and NTA for their failure to properly and accurately perform his drug test.

2. Plaintiff, a former employee of Quantix, brings claims for discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S. Code 12101 as well as state law claims for negligence and breach of contract.

**PARTIES AND JURISDICTION**

3. Plaintiff is a resident of Berkeley County, South Carolina.

1

4. Quantix is a for-profit Illinois corporation registered with the South Carolina Secretary of State and doing business in this state.

5. Alere is a for-profit Louisiana corporation registered with the South Carolina Secretary of State and doing business in this state.

6. NTA is a for-profit North Carolina corporation registered with the North Carolina Secretary of State and doing business in this state.

7. Venue is proper in this judicial circuit because the Defendants have conducted substantial and continuous business in the Charleston Division of the District of South Carolina.

8. The unlawful employment actions that are the subject of this complaint occurred in the Charleston Division of the District of South Carolina.

9. At all relevant times, Quantix continuously employed fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year and is subject to the ADA and Title VII.

10. At all relevant times, Quantix has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

11. Plaintiff has a qualifying disability and is entitled to protection under the ADA. Plaintiff's disabilities substantially limit one or more of his major life activities.

12. Plaintiff has exhausted his administrative remedies, having utilized the employer's internal grievance mechanisms, and filed the appropriate complaints with the U.S. Equal Employment Opportunity Commission. (EEOC).

13. On December 12, 2023, within 300 days of the unlawful employment practices complained of here Plaintiff filed a charge of discrimination with EEOC. The EEOC issues a Notice of Right to Sue letter dated February 27, 2024. (Exhibit 1).

14. Plaintiff has timely filed this action within ninety (90) days of the date of his Notice of Right to sue letter from the EEOC.

15. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims, which are brought pursuant to the common law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

16. Upon information and belief, at all material times mentioned herein, Defendants Alere and NTA were companies doing or transacting business in this judicial district by collecting, accepting, and testing urine samples and specimens pursuant to state and federal laws and regulations.

## RULE 23 CLASS ACTION ALLEGATIONS

17. Plaintiff also brings this action as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the below-proposed class.

*All individuals subject to DOT's workplace drug testing regulations who had a drug test performed by Alere, or NTA that resulted in a positive for a controlled substance and the test did not include quantitative values or confirmatory testing or was verified by an MRO within three (3) years prior to the filing of this lawsuit.*

18. Upon information and belief, this action satisfies the requirements of the South Carolina Rules of Civil Procedure 23(a), as alleged in the following particulars:

   a. The proposed Plaintiff's class is so numerous that joinder of all individual members in this action is impracticable;

b. There are questions of law and/or fact common to the members of the proposed Plaintiff's class;

c. The claims of Plaintiff, the representative of the proposed Plaintiff's class, are typical of the claims of the proposed Plaintiffs class; and

d. Plaintiff, the representative of the proposed Plaintiff's class, will fairly and adequately protect the interests of the class.

19. In addition, upon information and belief, this action satisfies one or more of the requirements of South Carolina Rules of Civil Procedure., because the questions of law and/or fact common to the members of the proposed Plaintiff's class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FACTUAL ALLEGATIONS

20. Alere is a wholly-owned subsidiary of Abbott Laboratories, a publicly owned company. Alere offers a comprehensive range of toxicology services, including urine, oral fluid, hair, and blood specimen testing to detect substance use. Alere markets itself as performing drug testing that complies with Department of Transportation regulations. ("DOT") https://www.toxicology.abbott/us/en/solutions/workplace.html

21. Alere has a $4.4 million contract with the Department of Transportation ("DOT") for providing forensic toxicology laboratory analysis in support of DOT's workplace drug testing programs.

22. NTA, provides testing drug and collection services to employers. NTA advertises and markets itself to companies claiming that they perform drug testing according to DOT drug testing regulations. https://nta-testing.com/industries/multi-modal-transportation-dot/

23. Alere and NTA testing and collection facilities are certified by Health and Human Services. ("HHS") under the National Laboratory Certification Program (NLCP).

24. Quantix is the leading supply chain services company to the chemical industry, with an extensive network of employees across 32 terminals and 17 warehousing and packaging facilities nationwide and a fleet of over 1,600 trucks and 1,600 trailers.

25. Plaintiff was employed by Quantix from January 2017 until his unlawful termination on April 10, 2023.

26. Plaintiff was employed as a Lift Operator at Quantix's location at 4953 Virginia Avenue, North Charleston, SC 29405.

27. Plaintiff's position with Quantix was subject to U.S. Department of Transportation drug testing regulations (49 C.F.R. § 40.1 et seq.) and Federal Motor Carrier Safety Administration ("FMCSA") regulations (49 C.F.R. § 382 et seq.)

28. Consequently, Quantix had a duty to ensuring all companies it contracted with performed drug testing according to DOT drug testing regulations and FMCSA regulations.

29. Quantix contracted with Alere and NTA to perform drug testing on its employees, which complied with DOT drug testing regulations, FMCSA, and industry standards.

30. The contractual relationship between Quantix and Alere, and NTA created a duty of care owed to Plaintiff and class members who were subject to drug testing by these laboratories. Alere, and NTA, had a duty of care to properly and accurately perform and report Plaintiff's and class members' drug tests.

31. Plaintiff was responsible for operating equipment that moved ISO tanks designed for exporting and importing chemical products.

32. Plaintiff was qualified for his position. He was a hard-working, responsible, and reliable employee who always met and exceeded Quantix's expectations. He had never had performance issues and was never formally disciplined.

33. Plaintiff has qualifying disabilities under the ADA. He has tumors and cysts at the base of brain and spinal cord. As a result of his disability, Plaintiff suffers from migraines, irritable bowel syndrome, anxiety, depression, and insomnia.

34. As a result of his disability, Plaintiff has physical and mental impairments that substantially limit one or more of his major life activities, such as walking, sleeping, eating, working, and overall functioning mentally and physically.

35. Plaintiff has a record of these impairments and regards himself as having such impairments.

36. Despite these disabilities, Plaintiff was always able to perform the essential functions of his job with or without an accommodation.

37. In 2018 the Farm Bill legalized some cannabis by stating that when the plants contain less than 0.3% of THC, they would be considered hemp. Plants with more than that amount would be categorized as marijuana, which remains an illegal controlled substance.

38. Consequently, CBD which contain less than 0.3% of THC is legal for sale, purchase and use across the United States, including in South Carolina.

39. The Farm Bill allows CBD products to contain a concentration of no more than 0.3% of THC. Unlike other cannabinoids, like tetrahydrocannabinol (THC; or marijuana) CBD is not psychoactive.

40. When CBD became legal, medical professionals recommended that Plaintiff take CBD to alleviate the symptoms caused by his disabilities because clinical studies indicate that CBD is an effective treatment for chronic pain, anxiety, and insomnia.

https://www.ncbi.nlm.nih.gov/books/NBK425767/,https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4604171/

41. In approximately 2019, Plaintiff started using over-the-counter CBD after work hours to treat the medical ailments he experiences because of his disabilities. Plaintiff purchased the CBD legally.

42. The legally purchased CBD helped relieve Plaintiff's stress, anxiety, and migraines with fewer side effects than conventional medication.

43. The CBD helped with the pain and discomfort caused by Plaintiff's disabilities; because of using CBD, his migraines occurred less frequently, he was in less pain, and he slept better.

44. Plaintiff told his supervisor Tom Oppold ("Oppold") about his disabilities and that he used CBD but in the evenings after work for medical reasons.

45. Plaintiff's job performance was not impacted by his CBD use. During the time that Plaintiff used CBD, he operated equipment for years without incident.

46. Plaintiff could perform his job with or without this accommodation. However, Oppold agreed to accommodate Plaintiff by allowing him to use legally purchased CBD to manage the symptoms of his disabilities after work hours.

47. One of the lifts that Plaintiff regularly operated had a history of mechanical problems and had dropped two (2) tanks.

48. Plaintiff informed Oppold and Tanya Rogers ("Rogers"), Quantix's Corporate Compliance Manager, that the lift was not working properly, had dropped tanks, and was unsafe.

49. Rogers and Oppold instructed Plaintiff to continue using the lift with mechanical problems even though he informed them he believed it was unsafe.

50. On March 22, 2023, the lift malfunctioned again and dropped a tank. Fortunately, no one was hurt. Plaintiff was not responsible for the lift dropping the tank; the accident was a result of the faulty lift that Plaintiff had warned Rogers and Oppold about. There was nothing the Plaintiff could have done to prevent the accident. Plaintiff was not impaired in any way and was operating the lift properly.

51. Plaintiff immediately reported the incident to Oppald. Oppald asked Plaintiff if he could return to the lift and finish the job. Plaintiff told Oppald he could. Plaintiff followed Oppald's instructions, and he operated the lift immediately after the accident.

52. Oppald's request for Plaintiff finish the job proves that Oppald knew Plaintiff was not under the influence of any illegal substances and that the accident was not the Plaintiff's fault. Otherwise, he would not have asked the Plaintiff to continue to operate the lift.

53. After Plaintiff finished the job, Oppald advised Plaintiff that it was standard protocol to drug test the operator after an accident. Oppald instructed Plaintiff to submit to a drug test that day and told Plaintiff where to go for testing.

54. The plaintiff followed Oppald's instructions and reported to Low Country Drug Screening ("LCDS") at 4600 Goer Dr Ste. 205, North Charleston, SC 29406. Based on information and belief, LCDS collected the Plaintiff's sample according to DOL regulations and followed the proper chain of custody. LCDS provided the Plaintiff's urine for drug testing to NTA and Alere with the proper testing number.

55. NTA and Alere were aware the testing they performed on Plaintiff's specimen needed to comply with DOT and FMCSA regulations.

56. A few days after submitting to a drug test, Plaintiff received a phone call from an agent of Alere and NTA falsely informing him that his drug test was positive for marijuana metabolites tetrahydrocannabinol, otherwise known as "TCH".

57. The agent's report to Plaintiff was a false positive because Alere, and NTA only performed a drug screening, which did not contain any quantitative values. (Exhibit 2)

58. Alere and NTA did not properly and accurately perform and report Plaintiff's drug test. They acted in reckless disregard of numerous DOT drug testing regulations by: (1) only performing a drug screen, not a drug test; (2) failing to obtain any quantitative values of the alleged THC; (3) failing to perform a confirmatory drug test of the alleged THC; (4) failing to have the quantitative values and confirmatory testing verified by a Medical Review Officer ("MRO") as set forth in 49 C.F.R. § 40.1 *et seq.*

59. Contrary to the agent's report, Plaintiff's test did not indicate a positive result. DOT regulation 49 C.F.R. § 40.3 defines a positive result as "when a specimen contains a drug or drug metabolite equal to or greater than the cutoff concentrations." Because Defendants never even bothered to obtain quantitative values to determine whether the TCH metabolite levels were equal or greater than the cutoff concentrations to meet the definition of a positive result, Plaintiff's test could not possibly be considered a positive result.

60. Alere, and NTA, violated DOT regulations 49 C.F.R. § 40.85 by failing to use the required cutoff concentration of 50 ng/mL marijuana metabolites (THCA) as the initial test analyte and 15 ng/mL as the confirmatory test cutoff concentration and because they failed to even perform a test and only performed and reported a drug screen.

61. Alere and NTA were aware that initial urine drug screens frequently produce false positives, which is why the DOT regulations mandate confirmatory testing; however, they failed to perform any confirmatory testing on the Plaintiff's and class members' specimens.

62. The false drug tests that Alere, and NTA, published to others about Plaintiff and class members were made in reckless disregard of several DOT drug testing regulations.

9

63. Had the proper testing been performed, Plaintiff's test would have been negative for TCH.

64. Plaintiff told Alere, and NTA, agent that he does not take illegal substances and that the positive result was false. He explained that he uses CBD to alleviate symptoms due to a disability, and the test was likely a false positive.

65. Plaintiff asked the agent to perform confirmatory testing. The agent told Plaintiff he would not perform confirmatory testing and that he was going to report to Quantix that Plaintiff's test indicated a confirmed positive for marijuana metabolites THC.

66. Alere, and NTA, falsely reported to Quantix that Plaintiff's drug test indicated a confirmed positive for marijuana metabolites THC. Notwithstanding that, they knew or should have known that Plaintiff's drug screen was not a positive result and that it violated DOT regulations and industry standards and was a false positive.

67. Defendants Alere and NTA violated their duty to the Plaintiff, which arose from their contractual relationship with Quantix to collect properly and accurately, test, and report the Plaintiff's test results according to DOT drug and alcohol testing regulations.

68. Plaintiff told Oppald that he asked the agent to perform confirmatory testing and the agent refused. He told Oppald that he does not take illegal substances, and the test must be a false positive due to the CBD he uses to alleviate the symptoms related to his disabilities.

69. Quantix knew or should have known that Plaintiff's drug test did not comply with DOT drug testing or the policies and procedures set forth in their employee handbook because the test did not contain any quantitative values. (Exhibit 2)

70. Quantix violated its contractual duty to Plaintiff to adhere to their Laboratory Testing Methodology as set forth in their Handbook. (Exhibit 3)

71. Quantix's Handbook constitutes an enforceable contract between Quantix and the Plaintiff. Quantix required Plaintiff to agree to and sign the "Confirmation of Handbook Receipt" stating he would abide by and was subject to the policies and procedures in the Handbook.

72. The Handbook required Quantix to adhere to the Laboratory Testing Methodology, which states, "All specimens identified as positive on the initial test shall be confirmed using chromatography/mass spectrometry (GC/MS) techniques" and to have Medical Review Officer ("MRO") review and verify Plaintiff's tests results. (Exhibit 3)

73. Quantix failed to require Alere, or NTA, to perform chromatography/mass spectrometry (GC/MS) techniques and to have the results reviewed and confirmed by an MRO, which violated their contract with the Plaintiff.

74. Plaintiff asked the Defendants to perform confirmatory testing according to DOT regulations and the Handbook, and they refused.

75. Plaintiff also told Oppald he does not use marijuana and has only purchased CBD over the counter to treat the symptoms of his disabilities.

76. Oppald told Plaintiff he did not want to lose him as an employee because he was a good worker. He advised Plaintiff to continue working and that he would discuss the drug test results with Rogers.

77. Oppald, Rogers, and Quantix knew that Plaintiff's test was a false positive and that Plaintiff did not use controlled substances because they allowed him to work and operate the lift from March 23, 2023, to April 10, 2023.

78. On April 10, 2023, Oppald terminated Plaintiff. Oppald told Plaintiff the reason for his termination was Alere, and NTA's, report that Plaintiff's drug test was a positive test for TCH.

79. Quantix terminated Plaintiff because he was disabled and treated the symptom of his disability with CBD which resulted in a false positive on a drug screen. Had Defendants performed testing according to DOT Regulations Plaintiff's drug test would have been negative.

80. Oppald, Rogers, and Quantix failed to accommodate the Plaintiff's disability by allowing him to use CBD in his off-work hours to alleviate the symptoms of his disability.

81. Quantix failed to engage in the interactive process when they terminated Plaintiff and replaced him with a non-disabled person.

82. Alere, and NTA, defamed Plaintiff and putative class members by falsely publishing that their drug test results were positive for controlled substances when they failed to perform the drug tests according to DOT regulations.

83. Alere and NTA's failure to perform drug tests on Plaintiff and class members according to DOT regulations resulted in false positives.

84. Plaintiff and members of Plaintiff's class have been damaged by Alere, and NTA, negligent testing in that they have suffered adverse employment action, irreputable damage to their reputations and emotional distress.

**FIRST CAUSE OF ACTION**
(NEGLIGENCE AND GROSS NEGLIGENCE)
(CLASS CLAIMS) (ALL DEFENDANTS)

85. Plaintiff and members of Plaintiff's class members incorporate all allegations above into this cause of action.

86. Defendants owed a duty of care to the Plaintiff and Members of Plaintiff's Class to perform their drug tests per DOT drug testing regulations and industry standards and to report accurate results.

87. Alere and NTA breached a duty of care by falsely reporting positive drug tests when they only performed drug screens and did not obtain any quantitative values, did not conduct

confirmatory testing, or have the tests verified by an MRO in violation of numerous DOT regulations.

88. Alere and NTA proximately caused damages to Plaintiff and members of Plaintiff's class. Defendants negligently ignored DOT regulations for drug tests.

89. Quantix knew or should have known the testing conducted by Alere and NTA violated DOT regulations and they have should have relied on the tests to terminate Plaintiff.

90. Quantix should have required Alere and NTA to perform Plaintiff's drug test according to DOT standards.

91. Defendants were responsible for ensuring that all phases of Plaintiff's and members of Plaintiff's class drug tests were carried out with strict adherence to DOT Drug Testing Regulations as well as industry standards to protect Plaintiff and class members' civil rights.

92. Defendants failed to exercise even slight care when they published false drug tests to Plaintiff's and class member employers, causing them to suffer adverse employment actions.

93. Defendants' conduct of disregarding numerous DOT drug testing regulations was reckless, willful, and wanton; and demonstrated a conscious failure to exercise due care.

94. By their aforesaid actions, Defendants' negligence and gross negligence has caused Plaintiff and members of Plaintiff's class harm, causing them to be subjected to great humiliation, embarrassment, loss of reputation, and loss of their livelihood for which compensation is claimed.

95. The aforesaid loss and damage were caused solely and wholly through the negligence and gross negligence of the Defendants and without any negligence on the part of Plaintiff and members of Plaintiff's class contributing.

**SECOND CAUSE OF ACTION**
(DEFAMATION-CLASS CLAIMS)
(DEFENDANTS ALERE, NTA)

96. Plaintiff and members of Plaintiff's class incorporate all allegations above into this cause of action.

97. On or about March or April of 2023, Defendants Alere, and NTA, publicized a drug screen report to Quantix that falsely insinuated that Plaintiff was actively using marijuana and was performing his job under the influence of a controlled substance.

98. Defendants Alere, and NTA, publicized reports that falsely insinuated that Plaintiff's class members were actively using controlled substances.

99. Defendants Alere and NTA provided a drug screen report to the Plaintiff's employer that was inaccurate, misleading, and false.

100. Defendants Alere and NTA, provided inaccurate, misleading, and false drug screen reports to the employers and potential employers of Plaintiff's class members.

101. The drug reports Defendants Alere and NTA published about Plaintiff's class members' employers were inaccurate, false and constituted defamation per se.

102. Defendants Alere, and NTA's drug reports falsely insinuated that Plaintiff's class members were using an illegal substance and were performing their job under the influence of a controlled substance.

103. Defendants Alere and NTA's drug report was injurious to Plaintiff's and class members' character and reputation and exposed them to public hatred, contempt, or ridicule by falsely insinuating they were using controlled substances while working.

104. Quantix terminated Plaintiff based on the false and misleading drug screen report.

**THIRD, FOURTH AND FIFTH CAUSE OF ACTION**
VIOLATION OF ADA INDIVIDUAL CLAIMS
(DISCRIMINATION, FAILURE TO ACCOMMODATE, RETALIATION)
(DEFENDANT QUANTIX)

105. Plaintiff realleges and incorporates by reference all preceding paragraphs as if specifically set forth herein.

106. Plaintiff is disabled as defined by the ADA.

107. Plaintiff has suffered discriminatory conduct, because of his disability, in violation of 42 U.S.C.A. § 12112(a) and/or 42 U.S.C. § 12101, *et seq.*

108. Despite Plaintiff's disability, he could perform the essential functions of his job in a manner that met and/or exceeded Quantix's reasonable expectations.

109. Plaintiff suffered an adverse employment action even though he was satisfying his employers' legitimate expectations at the time of the adverse action.

110. Quantix had actual and constructive knowledge of Plaintiff's disabilities and his medical use of CBD for his disabilities.

111. The plaintiff asked for a reasonable accommodation to take over-the-counter CBD when he was not at work to alleviate the symptoms of his disabilities.

112. Quantix refused to accommodate Plaintiff, notwithstanding that it was not a hardship and did not interfere with Plaintiff's ability to do his job.

113. Quantix refused to engage in the interactive process to find a reasonable accommodation. Quantix failed to take all reasonable steps to prevent discrimination based on disability from occurring.

114. Plaintiff engaged in protected activity when he asked Quantix to allow him to take over-the-counter CBD for his disability.

115. Quantix retaliated against Plaintiff by terminating him for engaging in protected activity and replacing him with someone who was not disabled.

116. Quantix interfered with his rights under the ADA by terminating him for using CBD for his disability.

117. As a direct and proximate result of Quantix's violations of the ADA, Plaintiff has suffered and will continue to suffer emotional distress.

118. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial and further direct and proximate result of the Quantix's violation of the ADA.

119. Plaintiff has been compelled to retain the services of counsel to enforce the terms and conditions of the employment relationship with Quantix. Plaintiff has incurred, and will continue to incur, legal fees and costs.

120. Quantix's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for Plaintiff's rights protected by federal law and, therefore, Plaintiff is entitled to recover punitive damages.

**SIXITH CAUSE OF ACTION**
BREACH OF CONTRACT INDIVIDUAL CLAIMS
(DEFENDANT QUANTIX)

121. Plaintiff realleges and incorporates by reference all preceding paragraphs as if specifically set forth herein.

122. Plaintiff had an enforceable contract with Quantix that required them to adhere to the testing policies and procedures set forth in their Handbook.

123. Quantix breached the contract by failing to adhere to the testing procedures set forth in its handbook.

124. Quantix breached the contract by not providing Plaintiff a drug test that complied with DOT regulations as they promised in the Handbook.

125. Had Quantix performed the test according to DOT regulations and industry standards, Plaintiff's test would have been negative for TCH.

126. Quantix breached the contract by not affording Plaintiff the contractual drug testing rights set forth in the Handbook.

127. As result of Quantix's breach of his contract, Plaintiff suffered a loss of income and other benefits and has been otherwise injured and damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against the Defendants as follows:

A. Declaratory Judgment in favor of Plaintiff and Plaintiff's class members for all causes of actions brought against Defendants in this Complaint;

B. Declaratory Judgement that Quantix acted with malice or reckless indifference to the Plaintiff's federally protected rights under the ADA;

C. Injunctive relief in the form of reinstatement with reasonable accommodations.

D. Judgment against Defendants for Plaintiff's and Plaintiff's class members for compensatory damages;

E. Judgment against the Defendants for Plaintiff's and Plaintiff's class members for punitive damages;

F. Judgement against Defendants for the embarrassment, humiliation, and emotional suffering resulting from the loss of Plaintiff's and class members' reputations;

G. An award of the reasonable attorneys' fees and costs incurred by Plaintiff and class members;

H. An award of pre-judgment and post-judgment interest;

I. All applicable damages available for Plaintiff and class members pursuant to the causes of action brought by Plaintiff; and

J. All such further relief as the Court deems just and equitable.

                    Respectfully submitted,

                    s/Marybeth Mullaney
                    Marybeth Mullaney (S.C. Bar #6685)
                    Mullaney Law
                    4900 O'Hear Ave
                    North Charleston, South Carolina 29405
                    (843) 588-5587 Phone
                    marybeth@mullaneylaw.net

                    ATTORNEY FOR PLAINTIFF AND PUTATIVE
                    CLASS MEMBERS

Date: August 19, 2024
Charleston, South Carolina